UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA        *    Case No. 08-CR-906 (KAM)
                                *
                                *    Brooklyn, New York
                                *    March 29, 2010
     v.                         *
                                *
KEMO SYLLA,                     *
                                *
            Defendant.          *
                                *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          PATRICK SEAN SINCLAIR, ESQ.
                             SREE VAMSHI REDDY, ESQ.
                             Asst. United States Attorney
                             United States Attorney's Office
                             271 Cadman Plaza
                             Brooklyn, NY 11201


For the Defendant:           ZACHARY MARGULIS-OHNUMA
                             Law Office of Zachary
                               Margulis-Ohnuma
                             260 Madison Avenue, 18th Floor
                             New York, NY  10016


Certified Interpreter:       MR. PA DRAMMEH




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1       (Proceedings commenced at 3:49 p.m.)

2           THE COURT:  Criminal cause for a pleading, 08-CR-

3   906, USA versus Kemo Sylla.  Please state your appearances

4   for the record.

5           MR. SINCLAIR:  For the United States, Patrick

6   Sinclair and Vamshi Reddy.  Good afternoon.

7           THE COURT:  Good afternoon.

8           MR. MARGULIS-OHNUMA:  Zachary Margulis-Ohnuma, 260

9   Madison Avenue, for the defendant Kemo Sylla.  Good

10  afternoon, Your Honor.

11          THE COURT:  Good afternoon.  And we have an

12  interpreter here.  Sir, your name for the record?

13          THE INTERPRETER:  My name is Padia Drammeh.

14          THE COURT:  All right.  Would you please take an

15  oath to interpret these proceedings?

16      (The interpreter is sworn.)

17          THE COURT:  Thank you.  Mr. Sylla, will you please

18  rise and take an oath to tell the truth?

19      (The defendant is sworn.)

20          THE CLERK:  You may be seated.

21          THE COURT:  Mr. Sylla, before deciding whether to

22  accept your guilty plea, there are a number of questions that

23  I must ask you in order to assure myself that your plea is

24  valid.  If you do not understand one of my questions, please

25  let me know and I will re-phrase my question.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that having been

3     sworn, your answers to my questions are subject to penalties

4     of perjury or making false statements if you do not answer

5     truthfully?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Would you state your full name for the

8     record, please?

9          THE DEFENDANT:  My name is Kemo Sylla.

10         THE COURT:  Thank you, sir.  And can you tell me

11    how old you are?

12         THE DEFENDANT:  34 years old.

13         THE COURT:  I'm sorry?

14         THE DEFENDANT:  34.

15         THE COURT:  34 years old.  Thank you.  And sir, you

16    can have a seat if you'd like.  Can you tell me what

17    schooling or education you've had?

18         THE DEFENDANT:  I didn't go to a regular school.

19         THE COURT:  All right.  Did you obtain any sort of

20    education, sir?

21         THE DEFENDANT:  I had a little bit just to maintain

22    how to pray and worship.  And that's about it.

23         THE COURT:  You learned how to pray and worship at

24    a religious school?  Is that what you said?

25         THE DEFENDANT:  Yes.  It's a religious school, but

1    I didn't say that, no.

2            THE COURT:  All right, sir.  Do you read or

3    write -- no?

4            THE DEFENDANT:  No.

5            THE COURT:  All right.  Have you been able to

6    communicate with your attorney either in English or with the

7    assistance of an interpreter?

8            THE DEFENDANT:  Yes.  He tried to explain as much

9    as he can for me to understand.  Yes.

10           THE COURT:  Do you understand any English, sir?

11           THE DEFENDANT:  Yes.  I understand some.

12           THE COURT:  All right.  When you've communicated

13   with your attorney, have you communicated in English or with

14   an interpreter?

15           THE DEFENDANT:  English.

16           THE COURT:  All right.  And how long have you been

17   speaking English, sir?

18           THE DEFENDANT:  Since I've been in this country.

19           THE COURT:  And when was that, sir?

20           THE DEFENDANT:  1998.

21           THE COURT:  All right.  Thank you.  Have you had

22   any difficulty communicating with your lawyer in English?

23           THE DEFENDANT:  Yes.  Yes.  Sometimes.  There are

24   some words like he says it's very difficult for me to

25   understand but what he is -- he is still explaining to me to

1      the best of his ability for me to understand.

2              THE COURT:  All right.  What's going to be

3      important, Mr. Sylla, is that you understand what is in your

4      agreement, your plea agreement, and that you understand what

5      is going on in this proceeding today.

6              THE DEFENDANT:  Yes.

7              THE COURT:  If there's anything that you don't

8      understand, you must let me know immediately.

9              THE DEFENDANT:  Okay.

10             THE COURT:  Otherwise we are going to assume that

11     you do understand what is being said.

12             THE DEFENDANT:  Okay.

13             THE COURT:  Now may I just ask Mr. Ohnuma-Margulis

14     or -- I'm sorry if I've inverted your name.  Margulis-Ohnuma.

15     Have you been able to review the terms of the plea agreement

16     with Mr. Sylla with the assistance of an interpreter or

17     translator?

18             MR. MARGULIS-OHNUMA:  Your Honor, no.  I did it in

19     English but I spent quite a bit of time on it.  He was

20     intimately involved in every stage of the negotiations over

21     it so it's quite a lengthy negotiation.  And I'm entirely

22     satisfied that he understands.  The legal concepts are hard

23     in any language.  I'm entirely satisfied that he understands

24     them as well as any client can under the circumstances.

25     There was never any --

1          THE COURT:  Well, if he cannot understand English

2     fully, I don't understand how anyone could be satisfied that

3     he understands negotiations or what's in a written document

4     in English, especially if he says he doesn't read English.

5     What I'd like to do is to have you review with the

6     interpreter the terms of the agreement so he does understand.

7          MR. MARGULIS-OHNUMA:  Just -- for the record, I'm

8     entirely certain that he does, but I'd be delighted to do

9     that.  We have the interpreter here.  We can do that.

10          I've read to him verbatim and when we met in my

11     office over the last several days and several occasions I

12     spoke to him about it in principle as one always does before

13     signing it now.  I've read it to him aloud verbatim.  The

14     real issue is reading.  He's illiterate.  It's not an English

15     language problem.

16          THE COURT:  Well, he did say that there are some

17     things that he doesn't understand in English and that he

18     feels that although you have tried to the best of your

19     ability to explain things to him, there are things he still

20     doesn't understand.

21          I think it would be prudent to have the interpreter

22     review the terms of this agreement with him so that he does

23     understand.  Perhaps he can read it out loud to him in his

24     language.

25          MR. MARGULIS-OHNUMA:  Okay.

1          THE COURT:  All right?  Ms. Jackson, could you give

2     this to Mr. Margulis-Ohnuma?

3          THE CLERK:  Sure.

4          THE COURT:  What we're going to do is go off the

5     record.  I'll ask the interpreter to kindly read to Mr. Sylla

6     in his native language, please.  I have the waiver form if

7     he'd like to --

8          (Off the record from 3:45 p.m. to 4:19 p.m.)

9          THE CLERK:  We're on the record.

10          THE COURT:  All right.  Thank you.  Now Mr. Sylla,

11     did you have an opportunity to work with the interpreter and

12     your attorney to have the documents read to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And just so I'm clear, I want to make

15     sure you've had the plea agreement, superceding information,

16     waiver of indictment and the preliminary order of forfeiture

17     read to you?

18          THE DEFENDANT:  Yes.  Yes.

19          THE COURT:  Did you have any questions or issues

20     that you needed to confer with your attorney about, or are

21     you prepared to go forward?

22          THE DEFENDANT:  No questions.

23          THE COURT:  All right.  And Mr. Margulis-Ohnuma,

24     are you satisfied that your client has had a full opportunity

25     to have these documents translated and explained to him?

1          MR. MARGULIS-OHNUMA:  Yes, Your Honor.

2          THE COURT:  All right.  All right.  Mr. Sylla, are

3    you presently or have you recently been under the care of any

4    physician or a psychiatrist?

5          THE DEFENDANT:  No.

6          THE COURT:  In the past 24 hours, have you taken

7    any medicine or pills or alcoholic beverages or had any

8    narcotic drugs?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you ever been hospitalized or

11    treated for any narcotic or alcohol addiction?

12          THE DEFENDANT:  No.

13          THE COURT:  Have you ever been treated for any

14    mental or emotional problems?

15          THE DEFENDANT:  No.

16          THE COURT:  Is your mind clear?

17          THE DEFENDANT:  Yes.  Yes.

18          THE COURT:  Do you understand what is going on in

19    this proceeding, sir?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Mr. Sylla, did you have the

22    opportunity to review the superceding information with your

23    attorney and the interpreter?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right, sir.  As you may know, the

1    superceding information charges you with a felony violation

2    of federal law.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Specifically, you're charged with a

5    Lacey Act violation.

6              THE DEFENDANT:  Yes.

7              THE COURT:  And the superceding information charges

8    that between March 21st and December -- 2006 -- and

9    December 2nd, 2008, within the Eastern District of New York,

10   you knowingly imported, transported, sold, received, acquired

11   and purchased wildlife with a market value of more than $350,

12   specifically African elephant ivory and that you knew the

13   wildlife was taken, possessed and transported in violation of

14   federal law of the United States, specifically Title 16, U.S.

15   Code Section 1538(c) and 4223, Title 18 U.S. Code Section 545

16   and Title 50 of the Code of Federal Regulations, Part 23.

17             In addition, sir, the information seeks criminal

18   forfeiture of all wildlife and the information lists a number

19   of pieces of elephant ivory and in addition to the elephant

20   ivory sought to be forfeited, the information also seeks

21   forfeiture of two vehicles, neither of which are registered

22   to you.  Do you understand, sir?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  In addition, I'd like to

25   advise you that you do have a Constitutional right to be

1   charged by an indictment of a grand jury, but you can waive

2   that right and agree to be charged by an information of the

3   United States Attorney.

4           Instead of an indictment, the felony charge against

5   you has been brought by the United States Attorney in an

6   information -- a superceding information.

7            Unless you waive your right to be indicted, you

8   may not be charged with a felony under federal law unless a

9   grand jury finds by return of an indictment that there is

10  probable cause to believe that a crime has been committed and

11  that you committed that crime.

12          If you do not waive indictment, the government may

13  present its case to the grand jury and ask the grand jury to

14  indict you.

15          And now a grand jury is not composed of anyone

16  related to the government or to the Court.  Rather, the grand

17  jury is composed of citizens who live in the Eastern District

18  of New York.

19          A grand jury is composed of at least 16 but not

20  more than 23 people who are citizens of the Eastern District.

21  And at least 12 of those grand jurors must find that there's

22  probable cause to believe that you committed a crime, the

23  crime with which you are charged, before you may be indicted.

24  Now a grand jury might or might not vote to indict you.  Do

25  you understand so far?

1          THE DEFENDANT:  Yes.  Yes.

2          THE COURT:  All right.  If you waive indictment by

3     the grand jury, this case will proceed against you on the

4     U.S. Attorney's information just as though you had been

5     indicted.

6          Mr. Sylla, have you discussed the matter of waiving

7     your right to be indicted by a grand jury with your attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that you do have the

10    right to be indicted by a grand jury?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you wish to waive your right to be

13    indicted by a grand jury?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  Mr. Sylla, let me just ask

16    if you've signed this waiver of indictment form above the

17    line that says defendant?  Is that your signature, sir?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Mr. Ohnuma, before having your client

20    sign this waiver, did you -- are you satisfied that you fully

21    explained to him his right to be indicted?

22          MR. MARGULIS-OHNUMA:  Yes, Your Honor.

23          THE COURT:  Do you know of any reason why Mr. Sylla

24    should not waive his right to be indicted?

25          MR. MARGULIS-OHNUMA:  I do not.

1    THE COURT:  All right.  The Court finds that Mr.

2    Sylla has signed the waiver and that before doing so he was

3    knowledgeable of his right to be indicted and voluntarily and

4    knowingly waived his right to be indicted and the Court will

5    therefore accept his waiver of his right to be indicted.

6        Now Mr. Sylla, do you have any questions about the

7    superceding information that has been brought against you?

8        THE DEFENDANT:  No.

9    THE COURT:  All right.  And I take it you would not

10   like me to read this information to you, but you wish to

11   proceed.  Is that correct?

12       THE DEFENDANT:  Yes.

13       THE COURT:  All right.  Mr. Margulis-Ohnuma, have

14   you discussed the matter of pleading guilty with your client?

15       MR. MARGULIS-OHNUMA:  I have.

16       THE COURT:  Does he understand the rights that he

17   would be waiving if he were to plead guilty?

18       MR. MARGULIS-OHNUMA:  He does, Your Honor.

19       THE COURT:  Is he capable of understanding the

20   nature of the proceedings we are having right now?

21       MR. MARGULIS-OHNUMA:  Yes.

22       THE COURT:  Do you have any doubt as to whether or

23   not Mr. Sylla is competent to plead guilty?

24       MR. MARGULIS-OHNUMA:  I have no doubt.

25       THE COURT:  Have you advised Mr. Sylla of the

1    maximum and minimum sentence and fine that could be imposed

2    as a result of his guilty plea?

3              MR. MARGULIS-OHNUMA:  Yes, Your Honor.

4              THE COURT:  Have you also discussed with him how

5    the sentencing guidelines could be considered in his case?

6              MR. MARGULIS-OHNUMA:  Yes.

7              THE COURT:  All right.  Have you also discussed

8    with him the advisory nature of those guidelines?

9              MR. MARGULIS-OHNUMA:  Yes.

10             THE COURT:  Have you also discussed with him the

11   factors set forth in 3553(a)?

12             MR. MARGULIS-OHNUMA:  Yes.

13             THE COURT:  Mr. Sylla, you do have the right to

14   counsel as you know and Mr. Margulis-Ohnuma is here with you.

15   If you wish to confer with him at any time, you may do so.

16   Just let me know and I'll give you that opportunity.  Have

17   you had the chance to discuss your case with Mr. Ohnuma-

18   Margulis -- Margulis-Ohnuma?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you satisfied to have him represent

21   you, sir?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you have any questions about the

24   superceding information?

25             THE DEFENDANT:  No.

1           THE COURT:  Sir, you do have the right to plead

2      guilty to the superceding information.  Do you understand?

3           THE DEFENDANT:  Yes.

4           THE COURT:  If you -- or to the -- or to persist in

5      your plea of not guilty to the indictment in this case.  Do

6      you understand?

7           THE DEFENDANT:  Yes.

8           THE COURT:  If you persist in your plea of not

9      guilty to the indictment or to the information, under the

10     Constitution and laws of the United States, you're entitled

11     to a speedy and public trial by a jury with the assistance of

12     your counsel on the charges set forth in the superceding

13     information and/or the indictment.  Do you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  At the trial you would be presumed to

16     be innocent and the government would have to overcome that

17     presumption and prove you guilty beyond a reasonable doubt

18     with competent evidence as to each and every one of the

19     elements of the offenses charged in the indictment or the

20     information.  You would not have to prove that you were

21     innocent.

22           If the government failed to prove you guilty

23     beyond a reasonable doubt, the jury would have the duty to

24     find you not guilty.  Do you understand?

25          THE DEFENDANT:  Yes.

1      THE COURT:  And that is why sometimes juries will

2  return a not guilty verdict even though the jurors may

3  believe that the defendant on trial probably committed the

4  offenses charged.

5          When a jury returns a not guilty verdict, they are

6  not necessarily saying that they believe the defendant is

7  innocent, but rather they may be saying they're not convinced

8  beyond a reasonable doubt that the defendant is guilty.  Do

9  you understand the difference?

10      THE DEFENDANT:  Yes.

11      THE COURT:  In the course of the trial the

12  witnesses for the government would have to come to Court and

13  testify in your presence and your attorney would have the

14  right to cross-examine those witnesses and to object to any

15  of the evidence offered against you by the government.  Your

16  attorney would also have the right to present evidence and

17  witnesses on your behalf, but your attorney would have no

18  obligation to do so.  Do you understand?

19      THE DEFENDANT:  Yes.

20      THE COURT:  At the trial while you would have the

21  right to testify if you chose to do so, you could not be

22  required to testify.

23          Under the Constitution of the United States, you

24  may not -- you cannot be compelled to incriminate yourself so

25  if you decided at your trial not to testify, I would instruct

1   the jury that they could not hold that against you.  Do you

2   understand?

3               THE DEFENDANT:  Yes.

4               THE COURT:  If you plead guilty and I accept your

5   guilty plea, you will be giving up your Constitutional right

6   to a jury trial and all the other rights I have just

7   described.

8               There will be no further trial of any kind and no

9   right to appeal from the judgment of guilt entered against

10  you.  You will essentially be convicted based upon your plea

11  of guilty during the proceeding we are having right now and

12  the government will be free of any responsibility to prove

13  anything about what you did in connection with the offense

14  charged in the superceding information or the indictment.  Do

15  you understand?

16              THE DEFENDANT:  Yes.

17              THE COURT:  If you were to proceed to a trial and

18  were convicted by the verdict of a jury, you would have the

19  right to ask the Court of Appeals to review the legality of

20  all of the proceedings leading up to your conviction.

21              But when you give a -- when you enter a guilty

22  plea, you are giving up your right to bring any challenge or

23  appeal to your conviction or judgment of guilt because you

24  are substituting your own words for the jury's verdict.  Do

25  you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you plead guilty, I will have to ask

3     you questions about what you did in order to satisfy myself

4     that you are in fact guilty of the offense to which you seek

5     to plead guilty.  You will have to answer my questions

6     truthfully and acknowledge your guilt.  Thus, you will be

7     giving up your right not to incriminate yourself.  Do you

8     understand?

9          THE DEFENDANT:  Yes.  Yes.

10          THE COURT:  Are you willing to give up your right

11     to a trial and the other rights I have just discussed with

12     you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right, sir.  I understand that you

15     have entered into an agreement which we have marked as Court

16     Exhibit No. 1.  I'd like to ask you if your signature appears

17     on the last page of this document?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right, sir.  Before signing this

20     document, did you have the chance to have this entire

21     agreement translated for you and to discuss the terms with

22     your lawyer?

23          MR. MARGULIS-OHNUMA:  Your Honor, could we phrase

24     the question before or since to the defendant?

25          THE COURT:  Since.  Since signing -- oh, okay.  So

1    he signed it after -- before?

2              MR. MARGULIS-OHNUMA:  He signed it before.  It was

3    then translated to him and he acknowledged his signature

4    after the translation was completed.

5              THE COURT:  All right, sir.  Having had this

6    agreement translated and explained to you in your language

7    and having had the opportunity to discuss this with your

8    attorney, do you understand what the terms of this agreement

9    provide?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And do you, by signing this document,

12   intend to indicate that you both understand it and agree to

13   it?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right, sir.  Now there is an issue

16   I wanted to just clear with you.  In paragraph 5,

17   subparagraph (u) on page 7, there is a listing for one lot of

18   uncut rough diamond crystals.

19             Do you understand that you are agreeing to forfeit

20   those items as well as the other items listed in paragraph 5

21   of your agreement, including the elephant ivory and -- yes?

22   And the vehicles.  I take it you have no claim to the

23   vehicles listed in paragraph 5.  Is that correct?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  Did you want to say

1       something?

2              MR. MARGULIS-OHNUMA:  Yes.  In terms of the

3       forfeiture of the diamonds?

4              THE COURT:  Yes?

5              MR. MARGULIS-OHNUMA:  Your Honor, I just wanted to

6       make clear and we discussed this with the government that the

7       diamonds he was carrying that day did not belong to him.

8       They belonged to the mother of his child, Watabamba (ph.).

9              He's therefore -- he's not -- this -- in the

10      information, the inclusion of those diamonds for

11      informational purposes only, he's not -- he's forfeiting any

12      interest, if any, he would have in those diamonds.  He

13      doesn't have an ownership interest in those diamonds.

14             THE COURT:  All right.

15             MR. MARGULIS:  So -- but he's not trying to suggest

16      or agree that these were part of any ivory-smuggling scheme

17      or anything else, but the Judge asked us to conclude that he

18      has no interest in those and (inaudible).

19             THE COURT:  All right.  I understand.  Does -- Mr.

20      Sylla, do you agree that you're just disclaiming any interest

21      in any of the items listed in paragraph 5 and agreeing that

22      as far as your own interest is concerned in any of the pieces

23      of ivory, the two vehicles or the diamonds, you're not

24      asserting a claim and you're agreeing to forfeiture in terms

25      of your own interest.  Is that correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you want to add something, Mr.

3     Sinclair?

4          MR. SINCLAIR:  Just for the record so it's clear in

5     case this proceeding is ever brought up again in any

6     forfeiture procedures relating to the diamonds, the

7     government has sought to establish an ownership interest by

8     Ms. Watabamba (ph.) and she disavowed any interest when the

9     government did that also.  I just put that on the record for

10    completeness, Your Honor.

11         THE COURT:  All right.  Well, I take it the

12    government's either going to proceed with a forfeiture as to

13    those items or that warrant --

14         MR. SINCLAIR:  Yes.  We are going to proceed with

15    respect to the forfeiture of those items, Your Honor.

16         THE COURT:  All right.

17         MR. SINCLAIR:  And we will provide all necessary

18    notice, including individualized notice to Ms. Watabamba

19    (ph.) about the forfeiture procedures.

20         THE COURT:  All right.  Thank you.  Mr. Sylla, do

21    you have any questions so far about what has transpired in

22    this proceeding?

23         THE DEFENDANT:  No.

24         THE COURT:  I'm next going to advise you of the

25    maximum sentence and fine that could be imposed as a result

1   of your guilty plea to the superceding information.  That's

2   found at paragraph 1 of your agreement.  You face a maximum

3   term of imprisonment of five years and a minimum term of

4   imprisonment of zero years.  You face a maximum supervised

5   release term of three years which would follow any term of

6   incarceration.

7          While you are on supervised release, a Probation

8   Officer will have the authority to supervise your activities

9   and require that you report to him or about your activities.

10  If you do not comply with the terms of your supervised

11  release, you could be sentenced to prison for two years

12  without any credit for time that you've already served in

13  prison and without any credit for time that you have already

14  served on supervised release.

15         In addition, you face a $250,000 fine or the

16  greater of twice the gross gain or twice the gross loss as a

17  result from your offense.  In addition, you face a $100

18  mandatory special assessment which generally must be paid by

19  the time you are sentenced and you face deportation from the

20  United States.

21         In addition, as we discussed, you face the

22  forfeiture, your interest -- the forfeiture of your interest

23  in the items set forth in your plea agreement.  Do you

24  understand?

25              THE DEFENDANT:  Yes.

1            THE COURT:  Under the Sentencing Reform Act of

2    1984, the United States Sentencing Commission has issued

3    guidelines for judges to follow in determining a sentence in

4    a criminal case.

5            The Supreme Court has decided that those guidelines

6    are not mandatory but rather they are advisory.  The

7    guidelines provide a range of sentence within the statutory

8    minimum and statutory maximum and I will be required to

9    consider those guidelines as well as factors set forth in

10   Title 18 U.S. Code Section 3553 before arriving at a sentence

11   for you.

12           Your agreement at paragraph 2 sets forth the

13   government's estimated adjusted offense level as a level 20

14   which carries a range of imprisonment between 33 and 41

15   months assuming that you have no prior convictions.

16           In addition, paragraph 12 of your agreement

17   provides that if certain other individuals pled guilty by

18   March 31st, 2010 specifically Amade Zambuda and Drissa Diane,

19   that you will -- the government will ask me to give you an

20   additional one-level reduction in your offense level to a

21   level 19 and that will carry a range of imprisonment between

22   30 months and 37 months, again assuming that you will be

23   sentenced with a criminal history category of 1.

24           Have you discussed this particular provision with

25   your lawyer, sir?

1          THE DEFENDANT:  Yes.  Yes.

2          THE COURT:  All right.  In addition, at paragraph 4

3     of your agreement, you are agreeing that you will not appeal

4     or otherwise challenge your conviction or your sentence if I

5     impose a sentence of 41 months or less.

6          Do you understand that you are waiving your right

7     to appeal any sentence of 41 months or less?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  The answer was yes.  I

10    know.

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Do you understand that the

13    Court -- that I will not be able to determine your sentence

14    until after the Probation Department prepares what is called

15    a pre-sentence report and you and your attorney are given the

16    opportunity to review the report and to object to any of the

17    facts reported by the Probation Department?

18         THE DEFENDANT:  Okay.

19         THE COURT:  Do you also understand, sir, that after

20    I consider the sentencing guidelines I do have the authority

21    to impose a sentence that is more or less severe than that

22    called for by the sentencing guidelines?

23         THE DEFENDANT:  Yes.  Yes.

24         THE COURT:  Mr. Margulis-Ohnuma, are you in general

25    agreement with the government's estimated offense levels and

1    range of sentence as set forth in the agreement?

2              MR. MARGULIS-OHNUMA:  No, Your Honor.  I'm not.

3              THE COURT:  All right.

4              MR. MARGULIS-OHNUMA: I anticipate a <u>Fatico</u> hearing

5    on several of the factual issues set forth there.

6              THE COURT:  All right.  So it's your view that the

7    value of the ivory may affect the offense level and range of

8    sentence?

9              MR. MARGULIS-OHNUMA:  Yes, and as well as the

10   aggravated role adjustment that the government -- that we

11   will be contesting.  Now might be an appropriate time to

12   comment on the superceding information I want to put on the

13   record --

14             THE COURT:  All right.

15             MR. MARGULIS-OHNUMA:  -- before he allocutes.  I

16   think it would be -- which is the superceding information

17   sets forth with specificity a date of March 21st, 2006 at the

18   beginning of the violation and I think that date corresponds

19   with evidence relating to an ivory shipment that the

20   government thinks was proceeding to a part of the defendant's

21   conduct in this case.

22             And we'll be contesting that.  I just don't want

23   the information, his plea -- the plea of guilty to the

24   information to that particular date on it to the year -- to

25   be thought that it includes that particular act.  So he'll be

1    pleading as a whole that the dates are approximate and

2    inclusive.

3          We have no problem with that, but I just don't --

4    and but we -- the government and I have discussed the

5    appropriate way to handle this.  I think with that

6    stipulation he'll go ahead and enter the plea to the

7    information as it stands.

8          MR. SINCLAIR:  Your Honor, just to be clear,

9    there's no stipulation, obviously.  We understand that that's

10   the defendant's position with respect to the March 21st, 2006

11   shipment.

12         Similarly, we understand that the defendant

13   understands that the government's position is that the

14   shipment is attributable to the defendant and we intend at

15   the Fatico hearing to demonstrate to the Court by a

16   preponderance of the evidence that in fact he is in part

17   responsible for the importation of that ivory in addition to

18   domestic sales of ivory which will constitute the basis for

19   his plea today and that as a part of that continuing course

20   of conduct, both the importation of ivory and the eventual

21   domestic sales of ivory, that the defendant should be

22   sentenced based on those factors.

23         In addition to the importation and the domestic

24   sales of ivory, the government also expects at the

25   Fatico hearing that we will introduce evidence of his

1   supervision of people as the ivory was being imported

2   specifically with respect to Mfopa Yacouba who testified at a

3   deposition hearing the Court has as well as Sadu (ph.)

4   Fonbotmun (ph.) based on Mfopa's testimony.

5            So those will be the bases of the government's

6   submission to the Court to accept both the 12-point

7   enhancement for the market value of the ivory as well as the

8   two-point enhancement for the aggravating supervisory role.

9            Obviously, we have reserved our right to introduce

10  any other evidence that would also support those enhancements

11  as set forth in the plea agreement.

12            THE COURT:  All right.  So you're going to be

13  seeking a two-point for the aggravating supervisory role?

14            MR. SINCLAIR:  That's correct, Your Honor.

15            THE COURT:  I see.  Let me then just make sure that

16  Mr. Sylla understands that even though his attorney -- your

17  attorney disagrees with the government's estimated adjusted

18  offense level and the range of sentence that ultimately I'll

19  have to decide what those numbers are and if I come out with

20  a different calculation and a different -- that is, a

21  different adjusted offense level and range of sentence, that

22  will not be a basis for you to withdraw your guilty plea.  Do

23  you understand?

24            THE DEFENDANT:  Yes.

25            THE COURT:  All right.  Now do you have any

1    questions that you would like to ask me about your rights or

2    the charges or anything else relating to this proceeding?

3              THE DEFENDANT:  No.

4              THE COURT:  All right.  Do you understand that

5    parole has been abolished and if you are sentenced to prison

6    you will not be released on parole?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right, sir.  I will have the right

9    to accept your guilty plea based upon the proceeding we are

10   having right now without hearing anything more from you.  And

11   if I do accept your guilty plea today after I hear from you,

12   you may not change your mind.  Do you understand?

13             THE DEFENDANT:  Yes.  Yes.

14             THE COURT:  Are you ready to plead, sir?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Margulis-Ohnuma, do you know of any

17   reason why Mr. Sylla should not plead guilty?

18             MR. MARGULIS-OHNUMA:  No, Your Honor.

19             THE COURT:  Are you aware of any viable legal

20   defenses that are causing you to counsel to Mr. Sylla not to

21   proceed with his guilty plea?

22             MR. MARGULIS-OHNUMA:  I'm not aware of any

23   defenses.  No, Your Honor.

24             THE COURT:  All right.  Mr. Sylla, sir, what is

25   your plea?

1           THE DEFENDANT:  Guilty.

2           THE COURT:  Are you making the plea of guilty

3    voluntarily and of your own free will?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Has anyone threatened you or forced you

6    to plead guilty?

7           THE DEFENDANT:  No.

8           THE COURT:  Other than the agreement with the

9    government, has anyone made any promises that have caused you

10   to plead guilty?

11          THE DEFENDANT:  No.

12          THE COURT:  Did anyone make any promise to you

13   about what your sentence will be?

14          THE DEFENDANT:  No.

15          THE COURT:  At this time, Mr. Sylla, I'd like to

16   ask you to tell me in your own words what you did in

17   connection with the acts that are charged in your superceding

18   indictment.  I'm sorry.  Superceding information.

19          THE DEFENDANT:  Uh-huh.

20          THE COURT:  Would you speak here?

21          THE DEFENDANT:  I have ivory in the United States.

22   I know it's foreign, Your Honor.

23          THE COURT:  All right, sir.  Did you -- let me just

24   ask you the approximate range of dates as charged and I

25   understand what your lawyer said about March 21, 2006.  But

1    let's accept for purposes of the plea that these are

2    approximate ranges of dates.  Starting March 21, 2006 through

3    December 2nd, 2008.  Now did you knowingly import, transport,

4    sell, receive, acquire and purchase wildlife, that is,

5    elephant ivory from Africa during that time frame, sir?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And did that elephant ivory from Africa

8    have a market value of more than $350?

9              THE DEFENDANT:  I bought it here.

10             THE COURT:  You bought the ivory here?

11             THE DEFENDANT:  Here.  Yes.

12             THE COURT:  All right.  Do you know if the value --

13   did you pay more than $350 --

14             THE DEFENDANT:  Yes.

15             THE COURT:  -- for the African ivory?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you know how much it was that you

18   paid or what the value was of the ivory that you purchased?

19             THE DEFENDANT:  No.  I don't remember -- know how

20   much.

21             THE COURT:  You don't remember?

22             THE DEFENDANT:  But I know it's more than $350.

23             THE COURT:  All right.  Now did you know at the

24   time you purchased this African elephant ivory that doing so

25   was in violation of federal -- well, United States laws?  Did

1  you know that it was illegal in the United States to do that?

2  To buy African elephant ivory when you did that?

3  THE DEFENDANT:  Yes.

4  THE COURT:  All right.  Let me ask you this, sir.

5  Did you -- do you also agree to forego or to give up any

6  interest you may have in the pieces of African elephant ivory

7  set forth at paragraph 5 of your agreement?

8  THE DEFENDANT:  Yes.

9  THE COURT:  Do you also agree to give up any

10  interest you may or may not have in the two vehicles and the

11  uncut rough diamonds that are listed in paragraph 5 of your

12  agreement?

13  THE DEFENDANT:  Yes.

14  THE COURT:  Mr. Sinclair and Ms. Reddy, are there

15  -- is there anything else you would like to hear from Mr.

16  Sylla regarding his allocution?

17  MR. SINCLAIR:  Your Honor, we believe that the

18  defendant still needs to allocute that he in fact knew the

19  reason why it was illegal to sell the ivory here in the

20  United States is because he knew it had been illegally

21  imported which is consistent with the charge.

22  THE COURT:  I think he said he had purchased it,

23  not sold it.

24  MR. SINCLAIR:  He did say that he purchased it, but

25  he purchased it knowing that it had been illegally imported

1    is the critical part, I believe, that's the element --

2             THE COURT:  All right.

3             MR. SINCLAIR:  -- still.  We also have not yet

4    established a venue.

5             THE COURT:  All right.  Mr. Sylla, when you

6    purchased this African elephant ivory, did you know that it

7    had been imported into the United States illegally?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And can you tell me where you engaged

10   in the conduct of selling the African elephant ivory?

11            MR. MARGULIS-OHNUMA:  Can I have one moment, Your

12   Honor?

13            THE COURT:  Yes.

14        (Counsel and the defendant confer.)

15            MR. MARGULIS-OHNUMA:  Your Honor, I'd prefer that

16   my client not answer that question and the government will

17   proffer and establish the element.

18            THE COURT:  Well, may I ask another question?  Mr.

19   Sylla, did you know if this African elephant ivory was

20   imported through J.F.K. Airport?

21            THE DEFENDANT:  I don't know.

22            THE COURT:  You don't know?

23            THE DEFENDANT:  No.

24            THE COURT:  All right.  I guess I'll hear from the

25   government, then.

1          MR. SINCLAIR:  Yes.  The government's proffer would

2     be that the ivory that the defendant sold as part of this

3     continuing course of conduct as well as other ivory that he

4     received in the course of this conduct was imported through

5     John F. Kennedy Airport in Queens.  Therefore, the government

6     believes that there's sufficient venue here to proceed.

7          MR. MARGULIS-OHNUMA:  And we don't -- for the

8     record, we don't dispute that.  It's just that he doesn't

9     have personal knowledge of it and I don't think he's required

10    to for venue purposes.

11         MR. SINCLAIR:  And, Your Honor, if the defendant

12    wished to waive venue, of course the defendant could do that

13    knowingly also.  We do not need to have established venue

14    here for the Court to accept the plea.

15         THE COURT:  Well, is Mr. Sylla aware that he has --

16    well, that he may waive venue if he wishes to do so?  The

17    government has -- is prepared to prove that the ivory was

18    imported through J.F.K. Airport here in Queens, New York, but

19    he may also if you wish to do so, you may waive any objection

20    that you may have to venue.

21         MR. MARGULIS-OHNUMA:  Let me just explain that to

22    him, Your Honor --

23         THE COURT:  All right.

24         MR. MARGULIS-OHNUMA:  -- with the interpreter.

25         (Counsel and the defendant confer.)

1          MR. MARGULIS-OHNUMA:  Your Honor, Mr. Sylla advised

2     me that he does understand that and he wishes to waive venue.

3          THE COURT:  He does wish to waive?

4          MR. MARGULIS-OHNUMA:  Yes, Your Honor.

5          THE COURT:  All right.  Is there anything else the

6     government would like to hear from Mr. Sylla regarding his

7     allocution at this time?

8          MR. SINCLAIR:  Nothing further from the government,

9     Your Honor.

10         THE COURT:  All right.  Mr. Margulis-Ohnuma, is

11    there anything you'd like to add on behalf of your client to

12    his allocution?

13         MR. MARGULIS-OHNUMA:  No.  Thank you, Your Honor.

14         THE COURT:  Mr. Sylla, based upon the information

15    given to me, I find that you are acting voluntarily, that you

16    fully understand your rights and the consequences of your

17    plea and that there is a factual basis to your plea of guilty

18    to the superceding information.

19         I therefore will accept your plea of guilty to the

20    superceding information.  I'd like you to cooperate with the

21    Probation Officer in the preparation of your pre-sentence

22    report.

23         We have scheduled your sentencing date for

24    August 30th, 2010 at 2:00 p.m. and I would ask the parties to

25    please follow Federal Rule of Criminal Procedure 32 in

1    providing any objections to the P.S.R.

2           The defense should provide any objections to the

3    Probation Department, the government and the Court within two

4    weeks of receipt of the P.S.R.  The government will respond

5    within two weeks thereafter and you should make sure that the

6    Court and the Probation Office all get courtesy copies of

7    your submissions.  You need not file them on E.C.F.

8           In addition with respect to your sentencing

9    submissions or any motions, the defendant shall serve and

10   file those by E.C.F. no later than August 6th.  The

11   government will respond by August 13th and any reply will be

12   submitted by the defendant by August 19th.

13           Now those should be submitted by E.C.F., courtesy

14   copies provided to the Court and to Probation and we will see

15   you for sentencing August 30th at 2:00 p.m.

16           In addition at the defendant's request we're going

17   to schedule a <u>Fatico</u> hearing to discuss the issues regarding

18   Mr. Sylla's role in the offense as well as the value of the

19   ivory that he was involved in selling as part of this -- his

20   plea.

21           We have asked that the parties -- the defendant

22   submit papers by June 1, 2010, the government respond by June

23   8th, 2010 and any reply by the defendant be submitted by

24   June 11th, 2010.  Please provide courtesy copies to the Court

25   of your submissions.  Hard copies to our chambers.

1          In addition, as I said, we'll have the <u>Fatico</u>

2     hearing June 21 at 10:00 a.m.  Is there anything else I

3     should address?

4          MR. MARGULIS-OHNUMA:  Yes, Your Honor.  A couple of

5     small things.

6          THE COURT:  All right.

7          MR. MARGULIS-OHNUMA:  I'm sorry.  My schedule

8     doesn't go out that far, but I'm pretty sure I'm away the

9     last two weeks of August so I'm not sure that date's going to

10    work.

11         THE COURT:  Okay.

12         MR. MARGULIS-OHNUMA:  I don't mind using it as a

13    holding date to see what goes forward.

14         THE COURT:  All right.  Well, you -- once you get a

15    firmer view of your scheduling, you can always ask us to

16    adjourn --

17         MR. MARGULIS-OHNUMA:  Okay.

18         THE COURT:  -- the sentencing date.

19         MR. MARGULIS-OHNUMA:  Thank you, Judge.

20         THE COURT:  All right.

21         MR. MARGULIS-OHNUMA:  And in terms of the <u>Fatico</u>

22    submission -- well, actually (indiscernible).  It's my

23    practice in sentencing memoranda usually to include quite

24    personal, you know, emotional information that I think would

25    be inappropriate to file by E.C.F. and would ask for leave to

1       just serve copies on the government and the Court instead of

2       filing them --

3                THE COURT:  Well, I think you could file those so

4       that they would be visible only to the government and the

5       Court and you if you wanted to do it that way.  That way the

6       record would be complete.  I mean, at some point there's a

7       good --

8                MR. MARGULIS-OHNUMA:  Yes.

9                THE COURT:  -- possibility someone's going to be

10      reviewing my sentencing so I would want them -- the record to

11      be complete.

12               MR. MARGULIS-OHNUMA:  Okay.  I'll see if I can do

13      that.  I mean, I think it's actually just not in the -- it

14      involves submitting them to the Clerk's Office and not

15      E.C.F., then.  And file with the Clerk's Office.  I'll figure

16      out what the Clerk's Office would want.

17               MR. SINCLAIR:  Just in abundance of clarity, any

18      submission to the Court for sentencing purposes is

19      publicly -- it's a public document.  The government takes it

20      as it should be filed on E.C.F. unless there's a specific

21      reason why a particular document shouldn't be.  But simply

22      emotional import is not a basis to exclude it from the

23      record.

24               THE COURT:  I mean, the kinds of exceptions that we

25      make are medical -- confidential medical information.  That

1   would definitely be something that would be appropriately

2   redacted, but did you have an example?  I'm sorry.

3               MR. MARGULIS-OHNUMA:  No.  Yes.  That was my

4   example.  A HIPAA violation, you know, for some things.  But

5   in this case, Mr. Sylla is a refugee and came here -- was a

6   refugee as a child and serious war-time atrocities that are,

7   you know, don't need to be spread on the -- I mean, easily

8   available on E.C.F. and the public record and therefore my

9   usual practice is to submit them directly to the Court at the

10  Clerk's Office.  Which is, you know --

11              THE COURT:  You know, I have had other defendants

12  ask for consideration because of the experience with war-time

13  atrocities and it hasn't ever been under any sort of

14  protection, but I would encourage you to work that out with

15  Mr. Sinclair.

16              I do think that except for personal identifying

17  information of that in sense of health information generally,

18  that kind of information would be protected, but I would hope

19  that you two could work that out and I have also seen it done

20  that it can be filed in a way that would be accessible only

21  to the counsel and the Court.  But I'll leave that to you to

22  try to work out.

23              MR. MARGULIS-OHNUMA:  Okay.

24              THE COURT:  All right?

25              MR. MARGULIS-OHNUMA:  And the last question is I

1    discussed this briefly before the hearing with Mr. Sinclair

2    and I just want to make sure the Court is in agreement.

3              In terms of the -- of our Fatico submission, we

4    will be responding to the guideline calculation set forth in

5    the plea agreement and provide, I guess, by affidavit our

6    view of the facts, in terms of the amounts (inaudible) of the

7    facts and his role in the events.  And I suppose that

8    affidavit if necessary and then we would expect a response, I

9    guess, similarly by affidavit from the government.  Well, we

10   could proffer the (indiscernible) and then we would offer

11   testimony at the hearing, if necessary.  Is that, I mean,

12   again I'm asking for guidance.

13        THE COURT:  Well, for my purposes the more I

14   understand going into it I think the better it is for me.  I

15   mean, I would like to have as much information as possible

16   going into the hearing.  But --

17        MR. SINCLAIR:  The government will not be

18   submitting affidavits to our witnesses in advance or at least

19   not as law enforcement witnesses that we put on the stand.

20             We will, however, provide the Court with both

21   exhibits as well as the government's position on all of these

22   materials in advance of the eventual Fatico hearing.  And as

23   the Court has done in the past, I was operating under the

24   assumption that the Court would narrow the issues to the

25   extent that the Court feels as though it is prepared to make

1    findings on certain issues and not other issues and give us

2    guidance as to what at the <u>Fatico</u> hearing the Court wishes to

3    hear evidence on.  Obviously, we'll present evidence on

4    everything to be put in our submission.

5         THE COURT:  Well, as I understand it, the two

6    issues are the role on the offense and the value of the ivory

7    that Mr. Sylla has admitted to selling.  Is that correct?

8         MR. MARGULIS-OHNUMA:  Well, yes.  The problem is

9    it's not just the value as to Mr. Diane's plea or anything.

10   It's a discussion of the market value of the particular

11   ivory.  That's not the issue.  The issue is which sales he

12   was actually involved in and which he wasn't.

13        I can tell you right now he admits to the ivory

14   that was seized from his home and to certain other sales

15   (indiscernible) submission.  But he doesn't admit to the

16   large amount -- hundreds of thousands of dollars that the

17   government has tied to him.

18        We don't think it -- that there's evidence of that.

19   To the extent there may be, I think Mr. Sylla may testify as

20   to his actions in order to demonstrate to the Court that he

21   was not a knowing participant in either of those

22   transactions.  So that's what we foresee and I just want to

23   make sure that we do it in as orderly a fashion as possible.

24        THE COURT:  Well, I guess I'm having trouble

25   understanding what the issue would be, then.  You would set

1    forth what you're willing to --

2         MR. MARGULIS-OHNUMA:  I mean, it would make more

3    sense for me for the government to set forth its submission

4    first.  I understand --

5         THE COURT:  Well, why don't I do it this way?  Why

6    don't we have simultaneous submissions, then?  Do you want to

7    do it that way?  That both the government and the defendant

8    will submit on June 1st and then you'll have the opposition

9    by both parties by June 8th and then a final chance to reply?

10        MR. MARGULIS-OHNUMA:  I think that would be better.

11   I think one issue, Your Honor, will be the credibility of the

12   cooperator that will be -- there's no reason I can't respond

13   by within a week but I'll be doing a lot of the work

14   beforehand and we'll be attacking the credibility of the

15   cooperator.

16        THE COURT:  Was the cooperator going to be

17   testifying or are we going to be relying on his deposition?

18        MR. SINCLAIR:  The government --

19        THE COURT:  Assuming that that's the same person?

20        MR. SINCLAIR:  Yes.  We are speaking of the same

21   person, Your Honor -- the person who was the co-conspirator.

22   We have continued in our efforts to get him to come to the

23   United States.

24        I think that we've already made a submission to the

25   Court updating the Court that he's declined our very informal

1    request through his counsel.  We have continued through

2    diplomatic means to try to get him present by a May 3rd trial

3    date which we were anticipating.

4           I'm not overly hopeful that that should be

5    successful because there's no legal process to make him come

6    here which is something that we contemplated at the time of

7    the deposition.

8           So in all likelihood we will proceed with the

9    deposition testimony which was in the update and which the

10    government plans to submit to the Court so that Your Honor

11    may review that in advance and make whatever rulings the

12    Court prepares to make based on the credibility of the

13    witness at the deposition.

14           THE COURT:  All right.  So I think the best way may

15    be to -- is to have simultaneous submissions, back and forth,

16    back and forth.  Maybe you don't need the third opportunity

17    for reply, but I'll leave that as an option if you do want to

18    make a reply.

19           MR. MARGULIS-OHNUMA:  Your Honor, if I may?

20    Perhaps we can just make simultaneous submissions on the

21    first, May 11th and skip out the middle date?

22           THE COURT:  Okay.

23           MR. SINCLAIR:  I think that's a good idea and that

24    I would --

25           THE COURT:  All right.

1          MR. SINCLAIR:  -- appreciate the ten days.

2          THE COURT:  All right.

3          MR. SINCLAIR:  But we should also have a reply

4    date, then, I guess for the following week.

5          THE COURT:  For a reply?

6          MR. MARGULIS-OHNUMA:  Oh --

7          MR. SINCLAIR:  An optional reply.

8          THE COURT:  The hearing's the 21st.  I would like

9    some time to review the papers.  I guess we can give you one

10   other date.

11         MR. SINCLAIR:  My suggestion was originated to try

12   to cut out the third --

13         THE COURT:  Yes.

14         MR. SINCLAIR:  -- submission.  That's -- we can go

15   with these days, Your Honor, if that's easier for the Court.

16         THE COURT:  Do you have any objection to those

17   dates?  I mean, I said --

18         MR. SINCLAIR:  -- the possibility that this is the

19   third submission, so we can keep the dates as they are.

20   Without having a third --

21         THE COURT:  Keep them as they are?  All right.

22   June 1st, June 8th and June 11th.  Okay.  We'll keep it like

23   that.  All right.  Thank you.  Yes?

24         MR. SINCLAIR:  One last request is that the Court

25   enter the preliminary order of forfeiture.

1          MR. SINCLAIR:  Okay.

2          MR. MARGULIS-OHNUMA:  No objection.

3          THE COURT:  All right.  Can you give this -- oh,

4     yes, you did.  All right.  Mr. Sylla, the government has

5     asked for the Court to sign a preliminary order of forfeiture

6     regarding the items that were specified in your plea

7     agreement at paragraph 5 and your attorney -- I just want to

8     confirm there is no objection to -- did you have any

9     objection to this?

10          MR. MARGULIS-OHNUMA:  No, objection, Your Honor.

11          THE COURT:  Okay.  Thank you.  All right.  Is there

12     anything else?  I've gone ahead and signed it.  Would you

13     like this?

14          MR. SINCLAIR:  No, Your Honor.  The government's

15     request is that the Clerk file --

16          THE COURT:  All right.

17          MR. MARGULIS-OHNUMA:  -- all of the preliminary

18     orders of forfeiture.  It's for the purpose of I guess

19     obscuring the Court's signature --

20          THE COURT:  All right.

21          MR. MARGULIS-OHNUMA:  -- which only the Court can

22     do as well as the information and waiver.

23          THE COURT:  Okay.  We have your agreement now.

24          MR. MARGULIS-OHNUMA:  I think that one, Your Honor.

25          THE COURT:  Okay.  All right.  Thank you.  Thank

1  you, sir.

2          MR. MARGULIS-OHNUMA:  Thank you, Your Honor.

3          MR. SINCLAIR:  Thank you, Judge.

4      (Proceedings concluded at 5:08 p.m.)

5      I, CHRISTINE FIORE, court-approved transcriber and

6  certified electronic reporter and transcriber, certify that

7  the foregoing is a correct transcript from the official

8  electronic sound recording of the proceedings in the above-

9  entitled matter.

10

11  *Christine Fiore*

12  _____          April 28, 2010

13      Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24